CONCURRING IN PART AND DISSENTING IN PART
BATCHELDER, Circuit Judge,
concurring in part and dissenting in part.
I concur with the majority’s opinion regarding Savage’s discrimination and retal *455 iation claims under USERRA. While Savage may have satisfied his burden to present a prima facie case of discrimination or retaliation, FedEx has ably demonstrated that it would have terminated Savage “in the absence of’ his military service or complaints.
I respectfully dissent from the majority’s resolution of Savage’s USERRA pension denial claim. I agree that the court may consider Savage’s claim, but I would hold that Savage has failed to demonstrate that FedEx’s method of calculating his “average rate of compensation,” in order to determine the appropriate amount that FedEx should contribute to his pension, violates 38 U.S.C. § 4318.
When computing an employer’s liability for pension benefits under § 4318, if the employee’s “rate [of compensation] is not reasonably certain,” an employer should make such computation “on the basis of the employee’s average rate of compensation during the 12-month period immediately preceding” the period of service. § 4318(b)(3)(B); see also 20 C.F.R. § 1002.267(b)(1). Although the meaning of the phrase “average rate of compensation” appears to be clear and straight-forward, the majority believes that “FedEx’s calculations may be inconsistent” with the statute’s requirements. As Savage’s arguments demonstrate, FedEx might have calculated his pension benefits in a way that provided a larger gain to Savage. However, simply because Savage, and the majority, can imagine a way to increase Savage’s pension benefits does not mean that FedEx violated § 4318 by failing to employ such a method.
The parties do not dispute that Savage’s rate of compensation “is not reasonably certain,” because Savage was, at times, entitled to shift differential pay, overtime pay, and premium license pay during his tenure at FedEx.[1] Instead, Savage criticizes FedEx for relying on his scheduled work hours in their rate-of-compensation calculation, arguing that he often worked more than his scheduled hours. Because he frequently picked up extra shifts or worked overtime hours, Savage argues that FedEx’s pension payment calculation should account for overtime hours he might have worked “but for” his military service leave. Savage therefore asserts that FedEx should have completed an additional step, determining Savage’s average work hours, before multiplying Savage’s average rate of' pay by his average work hours. Savage, however, fails to prove that the statute requires this extra step.
Contrary to Savage’s assertion, the language of the statute does not require FedEx to assume that Savage would have worked unscheduled shifts or overtime and then to calculate the average number of unscheduled hours that Savage might have worked but for his military service leave. Cf. Arocho v. Cent. States, Se. & Sw. Areas Pension Fund, No. 6:07-cv-01886, 2007 WL 2936216, at *7 (M.D. Fla. Oct. 9, 2007) (explaining that § 4318 does not require an employer to assume that a part-time employee would have become a full-time employee during his period of military service), aff'd per curiam, 276 Fed.Appx. 963 (11th Cir. 2008).[2]
*456 FedEx engaged in a sensible, and statutorily permissible, method of calculating Savage’s average rate of compensation. As described in the majority’s opinion, FedEx determined Savage’s rate of compensation by computing his average pay per hour (which included differential pay, overtime pay, and other increases to his rate of pay) for fifty-five separate leave periods. FedEx then multiplied that rate by the number of hours that Savage was on military service leave. As discussed at oral argument, FedEx determined the number of leave hours by relying on work schedules that were created in advance of Savage’s military service leave. Contrary to the majority’s belief that “Savage’s hours were not fixed,” Savage’s hours were fixed, to a certain degree, because'FedEx created advance schedules for its employees. Had Savage not been away on military service leave, he would have been required to work the hours for which he was scheduled. It is Savage’s self-selected overtime hours and extra shifts that varied from week to week, and it is unclear from the record how many unscheduled shifts or overtime hours Savage would have worked but for his military service. Therefore, FedEx did not violate the statute by refusing to speculate regarding the number of unscheduled hours Savage might have worked but for his military service.
Savage has certainly highlighted the ways that he believes FedEx might have improved its calculation of his pension benefits. However, simply because FedEx might have used a method of calculation more favorable to Savage, does not mean that it failed to comply with USERRA. For this reason, I dissent.

. Although, as FedEx creates advance schedules for its employees, it may very well be possible to determine to a reasonable degree of certainty Savage’s rate of pay for his military service leave. To the extent that FedEx could anticipate that Savage would be on military service leave for shifts where he was scheduled to receive differential pay or overtime pay, Savage’s rate of pay would not be uncertain and FedEx may not need to employ a 12-month lookback to determine Savage's average rate of compensation.

. The majority cites Arocho for the proposition that § 4318 requires a determination of *456 liability based on the plaintiff’s "period of employment immediately before he began military service.” However, Arocho does not discuss a rate-of-compensation calculation, but whether Arocho, as a part-time employee when he began military service, would have been eligible for pension contributions. The Arocho court explained that an employer making pension contributions should not be expected to speculate regarding hours the employee might have worked absent military service. Instead, the district court explained, the employer was entitled to make its pension determinations based on the employee’s status when military service began. Arocho, 2007 WL 2936216, at *7. The majority also cites Hanson v. County of Kitsap, 21 F.Supp.3d 1124, 1148 (W.D. Wash. 2014), in support of Savage's position. Hanson, however, merely discusses when compensation is not “reasonably certain,” and Hanson's employer did not provide evidence challenging Hanson's pension contribution calculations. Id.